[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury.
Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Valerie Anne Kren, were married on July 4, 1987 in the Borough of Queens, City and State of New York. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date that this action was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage, and no minor children have been born to the defendant wife since the date of the marriage of the parties. Neither party receives state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The parties separated in June of 1996 when the plaintiff vacated the family residence.
When the parties moved to Connecticut in 1989 from New York, it was a mutual agreement that the defendant would quit her employment and initially only work part-time, but not in the mechanical engineering field. The defendant stayed home at the condo they purchased at 137 Stony Hill Village, Brookfield, Connecticut, approximately three months in order to fix up the home with the agreement of the plaintiff. She then obtained part-time employment at Grolier, Inc. at $7.74 hourly working eighteen to twenty hours weekly. That was then increased to thirty hours weekly, and in July of 1996, she commenced working full-time. She presently earns $11.24 hourly.
The plaintiff was born on July 9, 1962.
The plaintiff has been employed by the Pepsi Cola Company since 1989. His job presently is that of an industry and processing improvement manager handling national contracts. His CT Page 1764 present gross weekly income is $1642. He has federal tax of $299 weekly, FICA of $101, Medicare of $23, 1989. His job presently is that of an industry and processing improvement manager handling national contracts. His present gross weekly income is $1642. He has federal tax of $299 weekly, FICA of $101, Medicare of $23, New York tax of $92 weekly. He has net weekly income of $1127. His last pay raise was in February of 1997. He receives an annual review regarding his salary. His salary can be increased in the range of 3 to 4 percent annually. Although not shown on financial affidavit, the plaintiff has a total of approximately 30,000 frequent flyer miles. Approximately 25,000 miles are required for one free flight. Although not shown on his financial affidavit, the plaintiff also has stock options through Pepsi Cola Company.
In February or March of 1997, the plaintiff exercised stock options through Pepsi Cola Company and received approximately $9000 that he used to pay existing credit card liabilities. When they separated in June of 1996, they had approximately $1000 to $2000 in credit card debts. Under the stock option plan, an employee must be employed on the vesting date in order for the stock options to be exercised. Each year, 20 percent of all stock options previously granted become vested. In 1995, the plaintiff received 300 shares of stock options.
The plaintiff presently leases a 1996 Oldsmobile Cutlas. The lease calls for twenty-four monthly payments of $294.19, each commencing August 29, 1996. The plaintiff paid down $3265 on the lease at the time of signing.
The plaintiff's financial affidavit shows a pension plan with Pepsi Cola with a value of $5361. That value was obtained from his employer in approximately August of 1997. The plaintiff is vested in that plan. At age sixty-five, on August 1, 2027, the plaintiff would have the option of either choosing a single lump sum payment estimated at $427,800 or choosing an annual income option.
The plaintiff's monthly rent is $1000.
The court finds that the fair market value of the family home is $130,000 and it has a mortgage balance of $136,000, and a negative equity of $6000.
The condominium owned by the parties was purchased in part through $5000 received from the plaintiff's parents, and $5000 CT Page 1765 received from the defendant's mother. It was purchased on August 31, 1990. The purchase price was $161,000. The purchase price was financed in part with a $142,745 mortgage.
The defendant was born on February 25, 1963.
The defendant is in good health.
The defendant holds a college degree as a mechanical engineer and has worked in the field of heating, air conditioning and ventilation. She has not worked in that field for approximately eight years. In order to return to that field, she would have to take a refresher course. She is also interested in obtaining an accounting degree. It would take her approximately two to four years to obtain that degree. She could earn in the $30,000 to $40,000 range annually if she obtained an accounting degree.
When the parties moved to Connecticut, the defendant was interviewing for engineering jobs in the $30,000 annual range.
The defendant commenced working at Grolier, Inc. on November 26, 1990, and continues to be employed there.
The plaintiff has various benefits through her employment including a medical plan, dental plan, and as well as life and accidental death. If she retires from Grolier, Inc. on her normal retirement date of March 1, 2028, her estimated projected lifetime monthly retirement income is $504.90. Her estimated monthly social security is $656. In order to be vested under the retirement plan, she has to have five years of service and she is therefore vested. If her employment ends before retirement, she will receive beginning at age sixty-five the benefit she has earned under the plan. She can elect to receive her benefit as early as age fifty-five. Benefits received prior to age sixty-five would be reduced. As of April 30, 1997, her accrued monthly benefit is $63.83.
The defendant has furniture and household furnishings. The court finds that its present fair market value of those items if $4000. She owns a 1990 Dodge Colt with a value of $2420. She does not have any liabilities. She has paid a total of approximately $8300 to date in legal fees and is paid in full.
When the parties separated, they had two bank accounts. One had approximately $24,000 in it. The defendant paid approximately CT Page 1766 $8300 out of this account for attorney's fees. She also used some of that money for paying the January, 1997 mortgage. The balance of the funds from the accounts that were left with her when the parties separated is now in the defendant's name only at Fleet Bank with a balance of $18,965. Part of that $18,965 is as a result of a tax refund that the parties split, as well as some savings from her employment. The parties each received approximately $1800 from the income tax refund.
The defendant has gross weekly income of $442 and net weekly income of $354. The present weekly payment on the mortgage on the condominium is $351, including taxes. It would cost the plaintiff approximately $800 to $1000 monthly if she were to rent an apartment. That amount would include utilities.
This court has considered the provision of § 46b-82
regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $350 weekly. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) June 1, 2001. The defendant should have received her accounting degree by that time, and she will then have less need for alimony.
2. The provisions of §§ 46b-86 (a) and 46b-84 (b) are applicable.
3. Alimony is non-modifiable as to term.
C. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to pay the liability on his affidavit and hold the defendant harmless therefrom. CT Page 1767
2. All of the plaintiff's interest in the leased vehicle is assigned solely to the plaintiff.
3. All furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff.
4. All furnishings and furniture in the possession of the defendant are awarded to the defendant.
5. The 1990 Dodge Colt, shown on the defendant's financial affidavit, is awarded to the defendant.
6. The Fleet Bank savings account, shown on the defendant's financial affidavit, is awarded to the defendant.
7. The defendant's pension plan through Grolier, Inc. is awarded to the defendant.
8. All of the plaintiff's vested stock options are awarded to the plaintiff.
9. The defendant is permitted to occupy the condominium owned by the parties until May 31, 1998. During the period of her occupancy, the defendant is responsible for paying the monthly payment for mortgage, taxes and common charges on the unit. The plaintiff shall have the right to occupy the condominium as of June 1, 1998, or earlier, in the event the defendant vacates the premises on an earlier date. She is also to be responsible for proper maintenance of the unit during the time she occupies it. In the event she elects to vacate the condominium unit prior to May 31, 1998, then she is to give to the plaintiff at least fifteen days advanced written notice by registered mail, return receipt, or certified mail, return receipt, of the date that she will have vacated the unit by. The court orders that the defendant quitclaim her interest in the condominium to the plaintiff within thirty days from today's date. The plaintiff is to be responsible for all charges relating thereto, effective upon the date the defendant vacates the condominium, including mortgage, taxes, insurance and common charges, and is to hold the defendant harmless against such charges. The plaintiff is to make all reasonable efforts to either have the defendant's name removed from the promissory note or to refinance the loan within twelve months from the date this decision is filed.
10. The court awards to the defendant 25 percent of the CT Page 1768 pension benefit to which the plaintiff is entitled from his employment at Pepsi Cola, Inc., as of the date he retires. This division is to take place by QDRO that is to be prepared by counsel for the defendant. The court retains jurisdiction over any dispute that may arise involving the language of the QDRO.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's are awarded in favor of either party.
E. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed. Any arrearages are not merged into the judgment and survive the judgment. In the event that the parties are unable to agree as to the amount of any such arrearages, if any, and how they are to be repaid, then they will have to file a short calendar motion for that purpose.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and forward to the counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt, or registered mail, return receipt, within fifteen days after such returns have been filed for so long as there is an outstanding alimony order or any outstanding arrearage from any such order.
3. An immediate wage execution is authorized for the alimony payments.
Axelrod, J.